UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PRIMARY PRODUCTIONS LLC, on behalf of itself and all others similarly situated<br><br>*Plaintiff,*<br><br>v.<br><br>APPLE INC.<br><br>*Defendant.* | Civil Action No. 21-cv-00137-JDL |

## APPLE INC.'S MOTION TO DISMISS

With the launch of the iPhone in 2007, Apple Inc. ("Apple") created the revolutionary and unique iOS ecosystem. Since then, Apple has focused on delivering to its consumers a safe, reliable, high-quality experience. One of the business strategies Apple employs to serve its customers is to offer a highly curated App Store in which each app available for download has gone through a rigorous process of review, including by Apple employees expert in app review. All apps on the App Store must adhere to Apple's App Store Review Guidelines, which address safety, privacy, performance, and reliability issues. Apple retains sole responsibility for ensuring that apps distributed through the App Store comply with the Guidelines.

This case arises because Plaintiff, an app developer, is unhappy that its cryptocurrency app was allegedly rejected from the App Store. In an attempt to challenge the lawfulness of Apple's alleged decision to reject its app, Plaintiff asserts a series of sweeping antitrust claims and two contract claims against Apple. But Apple has no obligation, under the antitrust laws or otherwise, to approve and distribute on its own platform apps that it has determined are inconsistent with Apple's Guidelines. Plaintiff's claims are thus meritless. This case should be dismissed for multiple independent reasons, or at the very least transferred to the Northern District of California

1

under the first-filed rule or Apple's transfer motion also filed today.

*First*, the Complaint should be dismissed under the first-to-file rule, which exists to prevent the inefficiencies and inconsistencies that result from allowing substantially similar actions to proceed in different federal district courts.  The rule exists for cases like this one.  The Complaint is a nearly word-for-word copy of a complaint recently filed by Plaintiff's counsel and ordered transferred to the Northern District of California by Chief Judge Landya B. McCafferty in the District of New Hampshire.  And dozens of the allegations in that complaint were copied verbatim from at least three other antitrust cases long pending in the Northern District of California.  This case should be dismissed or, at a minimum, transferred under the first-to-file rule.

*Second*, Plaintiff lacks Article III standing to bring claims arising from alleged injuries it did not suffer.  Plaintiff's alleged injury-in-fact is that its app was not approved for distribution on the App Store.  But the vast majority of Plaintiff's grievances, such as having to pay a 30% commission to Apple or being subject to "ranking suppression," have nothing to do with that rejection.  Any claims based on injuries Plaintiff did not suffer, including Counts I, II, and VI, must be dismissed.  Additionally, two of Plaintiff's proposed classes must be stricken under Rule 12(f) for the same reason: as defined, they depend on conduct that did not affect Plaintiff.

*Third*, Plaintiff's Sherman Act claims (Counts I–VI) fail because Plaintiff has not alleged essential elements of its claims.  It has not pleaded sufficient facts to make its conclusory relevant market definitions plausible and it has alleged injury only to itself—not to competition.  Plaintiff's Section 2 claims (Counts I, II, and IV) must be rejected because Plaintiff has alleged no exclusionary conduct, only a refusal-to-deal theory that runs afoul of well-settled Supreme Court precedent.  And Plaintiff's Section 1 unreasonable-restraint claim (Count V) flounders for still another reason: it challenges unilateral conduct, not the requisite concerted action.

*Fourth*, the claims for unlawful tying (§ 1) (Count VI) and denial of essential facilities (§ 2) (Count III), copied and pasted from *Epic Games v. Apple Inc.*, must be dismissed. Plaintiff does not have Article III standing to bring the tying claim, and in any event the Complaint does not sufficiently allege that the two allegedly tied products are distinct, an essential element of the claim. As to the essential facilities claim, it fails because iOS is not an essential facility and no law requires Apple to deal with another party on that party's preferred terms.

*Fifth*, Plaintiff's contract claims (Counts VII and VIII) must be dismissed because the Complaint does not identify any specific contract term in which Apple promised that developers like Plaintiff could distribute apps like Plaintiff's through the App Store. On the contrary, the relevant contract makes abundantly clear that Apple retains sole discretion to approve, or disapprove, the distribution of apps developed using its proprietary software and other tools. The claim for breach of the implied covenant of good faith and fair dealing rehashes the contract claim and fails for the same reason.

For these reasons, Apple respectfully requests that the Court dismiss Plaintiff's complaint.

## BACKGROUND

Apple introduced the App Store in 2008. Compl. ¶ 10. App developers wishing to distribute apps on the App Store must enter into two agreements with Apple: the Developer Agreement and the Developer Program License Agreement ("DPLA"). Developers must also abide by the App Store Review Guidelines (the "Guidelines").[1] The Developer Agreement governs the relationship between a developer and Apple, *see* Ex. A, while the DPLA governs the

---

[1] Both agreements and the Guidelines, attached as Exhibits A, B, and C, are "central" to Plaintiff's claims, are incorporated by reference in the Complaint, and may be considered on this motion. *Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir. 1993) (stating that documents "central" to claims or "sufficiently referred to in the complaint" may be considered on a motion to dismiss). Specifically, the Complaint defines a putative class as all U.S. app developers who have signed the DPLA, Compl. ¶ 117; and alleges that Apple enforces an unlawful tie "[t]hrough its Developer Agreement . . . and Guidelines," *id.* ¶ 192. California law governs both agreements. *See* Ex. A § 17 (Developer Agreement); Ex. B § 14.10 (DPLA). All exhibit citations herein are to the attached Declaration of Peter J. Brann.

distribution of apps created using Apple's proprietary tools and software, *see* Ex. B.    As particularly relevant here, the DPLA provides that Apple may reject apps in its "sole discretion." *Id.* § 6.9(b).  The Guidelines set out the standards Apple applies when exercising that discretion to review and select apps for distribution on the App Store, a process known as "App Review."  *See generally* Ex. C.  In App Purchasing ("IAP"), discussed throughout the Complaint, allows iOS users to purchase digital goods and services within apps.  *See id.* §§ 3.1.1, 3.1.3(e).

Plaintiff allegedly is an "edutainment media production company."   Compl. ¶ 14.  According to the Complaint, in mid-2018, after Plaintiff's Ukraine-based development team completed an app relating to cryptocurrency and blockchain technology, Plaintiff had the app submitted for App Review.  *Id.* ¶¶ 37–38, 40.  Plaintiff itself allegedly did not submit the app, as it alleges that it never signed the Developer Agreement or DPLA; instead, Plaintiff "contracted through third-parties to attempt to access the App Store."  *Id.* ¶¶ 14, 182.  Apple allegedly rejected the app in accordance with a general policy against blockchain mining apps, as well as because the app was "frivolous" and "caused risk-gambling."  *Id.* ¶¶ 38–39.

On May 17, 2021, Plaintiff filed this putative class action on behalf of three proposed classes.  Compl. at 1.  The Complaint asserts eight counts against Apple: Section 2 claims for monopolization and attempted monopolization (Counts I, II, and IV); an essential facility claim (Count III); a Section 1 unreasonable-restraint claim (Count V); a tying claim (Count VI); and two contract claims (Counts VII and VIII).  As outlined below, many of the allegations and claims in the Complaint are copied nearly verbatim from other antitrust actions filed against Apple, either currently pending in the Northern District of California or recently dismissed by Plaintiff's counsel after being ordered transferred to that district:[2]

---

[2]  The Court may take judicial notice of the complaints in these cases, which the Complaint cites, relies on, and/or copies from.  *See Zucker v. Rodriguez*, 919 F.3d 649, 652 n.5 (1st Cir. 2019).

| Coronavirus Reporter v. Apple Inc. (Ex. D) | Nearly all non-plaintiff-specific allegations; all counts |
| Epic Games v. Apple Inc. (Ex. E) | Allegations; essential facility and tying claims (Counts III and VI) |
| Cameron v. Apple Inc. (Ex. F) | Allegations, including class allegations; Section 2 monopolization/monopsonization claims (Counts I and II) |
| SaurikIT v. Apple Inc. (Ex. G) | Allegations |

The three classes proposed by the Complaint are: (1) "All U.S. developer-programmers of any Apple iOS application that was excluded through disallowance and/or ranking suppression, or non-participation in DPLA on Apple's iOS App Store, who signed, or did not sign, the DPLA"; (2) "All U.S. developers of any Apple iOS application or in-app product subject to a 30% sales commission [on] Apple's iOS App Store"; and (3) "U.S.-based iOS developers who were required to sign the DPLA and pay Apple $99 simply to access the 60% of the population that uses smartphone enhanced services (i.e. iOS) over the national internet backbone."  Compl. ¶¶ 117–22.

## LEGAL STANDARDS

The party "invoking federal jurisdiction bears the burden of establishing standing" to sue. *Blum v. Holder*, 744 F.3d 790, 795 (1st Cir. 2014).  "A plaintiff must separately prove standing for each claim he seeks to press."  *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 47 n.15 (1st Cir. 2011) (internal quotation marks omitted).  Rule 12(b)(1) "requires dismissal of claims over which th[e] Court lacks subject matter jurisdiction."  *Laufer v. Mar-Lyn in Me., LLC*, 2021 WL 1993553, at *1 (D. Me. May 18, 2021); *see* Fed. R. Civ. P. 12(b)(1), (h)(3).

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court takes as true only well-pleaded factual allegations and must disregard legal conclusions couched as factual allegations. *See Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 33 (1st Cir. 2011).

## ARGUMENT

### I.  The First-to-File Rule Mandates Dismissal, or Transfer, of This Action.

Under the first-to-file rule, this Court can dismiss a later-filed action that involves similar parties and issues as an action previously filed in another federal court.  *See TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996).  Plaintiff devotes a total of three sentences of its 221-paragraph Complaint to the purported differences between this case and similar earlier-filed cases in other districts.  *See* Compl. ¶ 2.  Those differences are illusory, and Plaintiff elsewhere acknowledges that the cases are similar.  The first-to-file rule thus squarely applies here.

That rule addresses the "obvious concerns" that arise when similar cases are pending in different federal courts: "wasted resources because of piecemeal litigation, the possibility of conflicting judgments, and a general concern that the courts may unduly interfere with each other's affairs."  *Bath Iron Works Corp. v. Congoleum Corp.*, 2019 WL 2110499, at *1 (D. Me. May 14, 2019) (quoting *TPM Holdings, Inc.* 91 F.3d at 4).  The rule does not require "strict identity" of parties or issues; instead, courts "examine the similarity of the parties involved and the similarity of the issues."  *Thakkar v. United States*, 389 F. Supp. 3d 160, 170–74 (D. Mass. 2019).  In the class action context, courts assess party similarity by "the classes" alleged.  *Id.* at 172.  Issue similarity is tested by asking "whether the plaintiff's case and the class action turn on similar determinations of fact and seek to resolve similar legal issues."  *Id.* at 173–74.

As an initial matter, the Complaint (and its proposed classes) is a near-duplicate of the Second Amended Complaint filed by Plaintiff's counsel in the District of New Hampshire.  *Compare, e.g.*, Compl. ¶¶ 130–221, *with* Ex. D ¶¶ 167–269.  On Apple's motion, the Court ordered that case transferred to the Northern District of California.  *See Coronavirus Reporter v. Apple Inc.*, 2021 WL 1946428, at *6 (D.N.H. May 14, 2021) (transferring case under § 1404(a)).  After

plaintiff there failed to persuade the Court to reconsider its transfer order, plaintiff voluntarily dismissed the case and threatened that it would re-file in another venue.  *See* Notice of Dismissal, ECF No. 40, at 1, *Coronavirus Reporter v. Apple Inc.*, No. 21-cv-47 (D.N.H. July 2, 2021).  By counsel's own admission, *Coronavavirus Reporter* involved a "similar Sherman Act claim theory" to this case.  Pl.'s Notice of Non-Opp'n, ECF No. 5, at 1; *see also* Reply to Show Cause, ECF No. 16, at 3 (calling *Coronavirus Reporter* a "related case").  Counsel's concessions demonstrate that this case is precisely the kind of redundant and wasteful litigation and forum-shopping the first-to-file rule seeks to prevent.  It should be dismissed outright.

Even setting aside *Coronavirus Reporter*, there is substantial overlap between this case and other App Store cases pending in California, a fact Plaintiff does not and cannot dispute.  Indeed, the Complaint concedes as much, noting that pending cases such as *Cameron* are "of particular relevance" to this case.  Compl. ¶ 27.  Further demonstrating the similarity between the cases, the Complaint actually purports to "incorporate[]" the complaints, findings of fact, and/or supporting evidence of four of the pending cases.  *Id.*  The only difference Plaintiff points to is that "[n]o other class action currently protects" two of its alleged classes.  *Id.* ¶ 2.  This is plainly incorrect.

Take *Cameron*: the named plaintiffs are app developers, just as Plaintiff allegedly is here.  And, contrary to Plaintiff's suggestion, the putative classes alleged here overlap substantially with the putative class alleged there.  The Complaint pleads a class of "[a]ll U.S. developers of any Apple iOS application or in-app product subject to a 30% sales commission [on] Apple's iOS App Store."  Compl. ¶ 119.  This class has almost complete overlap with the putative class in *Cameron*, which is defined as: "All U.S. developers of any Apple iOS application or in-app product (including subscriptions) sold for a non-zero price via Apple's iOS App Store."  Ex. F ¶ 113; *see also* Developer Pls.' Mot. for Class Cert., ECF No. 332, at 1, *Cameron v. Apple Inc.*, No. 19-cv-

3074 (N.D. Cal. June 1, 2021) (defining same class, with class period beginning June 4, 2015). The two classes overlap in overwhelming part because the only apps or in-app products "subject to a 30% sales commission," Compl. ¶¶ 119–20, are those "sold for a non-zero price," Ex. F ¶ 113. The Complaint also proposes a class of "U.S.-based iOS developers who were required to sign the DPLA and pay Apple $99." Compl. ¶ 121. This class entirely subsumes the *Cameron* putative class of iOS developers who sold apps or in-app products for a non-zero price, because as the Complaint alleges, *any* developer wishing to put an app on the App Store must pay a $99 fee. *Id.* ¶ 29; *cf. Cruz-Acevedo v. Unilever U.S., Inc.*, 2016 WL 9460633, at *5 (D.P.R. Sept. 26, 2016).

Similarly, the market-definition allegations and antitrust counts in the Complaint are adopted nearly verbatim from cases pending in the Northern District of California, further demonstrating issue similarity. *Cf. Waithaka v. Amazon.com, Inc.*, 404 F. Supp. 3d 335, 351 (D. Mass. 2019) (finding issue similarity when statements in later-filed complaint "track, virtually verbatim, statements" from first-filed action). For instance, Counts I and II are lifted almost word-for-word from the *Cameron* complaint. *Compare* Compl. ¶¶ 130–52, *with* Ex. F ¶¶ 124–46. Counts III and VI are copied from *Epic Games*, a case where a developer was removed from the App Store for violating Apple's Guidelines. *Compare* Compl. ¶¶ 153–66, 190–210, *with* Ex. E ¶¶ 193–206, 233–44. And the Complaint's market-definition allegations are copied from the complaint in *SaurikIT*. *Compare* Compl. ¶¶ 80–88, *with* Ex. G ¶¶ 35–41, 43–44, 47.

That the Complaint includes two contract claims not alleged in some of the other App Store cases—but that are alleged in *Coronavirus Reporter*—does not undermine the Complaint's substantial similarity to those cases. *See Thakkar*, 389 F. Supp. 3d at 174 (similarity established even when the second action alleged "various additional claims"); *cf. Wiley v. Gerber Prods. Co.*, 667 F. Supp. 2d 171, 172 (D. Mass. 2009) (finding causes of action "very similar" even when later

action added claims and invoked laws of different state than first-filed action).

Because this action is substantially similar to *Cameron*, *Epic Games*, and *SaurikIT*, all pending in the Northern District of California, the Court should dismiss this action. *See TPM Holdings*, 91 F.3d at 4; *cf. U.S. Fire Ins. Co. v. Med. Coaches, Inc.*, 2010 WL 2772207, at *2 (D.P.R. July 6, 2010) (dismissing complaint under first-to-file rule); *Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 959 (N.D. Cal. 2008) (same). Alternatively, at a minimum, the Court should transfer this case to the Northern District of California. *Cf. Bath Iron Works*, 2019 WL 2110499, at *3–4 (transferring action); *Jimenez v. Kohl's Dep't Stores, Inc.*, 480 F. Supp. 3d 305, 307 (D. Mass. 2020) (same).

## II.  Plaintiff Lacks Article III Standing to Bring Most Claims in the Complaint.

Plaintiff has failed to establish that it suffered Article III injury from much of the conduct alleged in the Complaint. Plaintiff therefore lacks Article III standing to challenge that conduct, and, at minimum, Counts I, II, and VI must be dismissed.

A plaintiff bears the burden of establishing Article III standing for its claims. *Amrhein v. eClinical Works, LLC*, 954 F.3d 328, 330 (1st Cir. 2020). A plaintiff must allege (1) injury in fact, (2) that is fairly traceable to defendant's conduct and (3) redressable. *Penobscot Nation v. Frey*, 2021 WL 2850139, at *17 (1st Cir. July 8, 2021). To show injury, a plaintiff must show that it suffered an injury that is "concrete and particularized." *Id.* "[P]laintiffs who represent a class must allege and show a past or threatened injury to *them*, and not just to other, unidentified members of the class to which they belong and which they purport to represent." *Amrhein*, 954 F.3d at 331 (citation & internal quotation marks omitted); *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016); *Jalbert v. SEC*, 945 F.3d 587, 594 (1st Cir. 2019).

First, Plaintiff lacks standing to bring any claims related to IAP or Apple's alleged 30%

commission on sales of paid apps and in-app digital products or services.  The Complaint contains no facts suggesting that Plaintiff intended to charge for its app, or offer any paid in-app content, that would have been subject to IAP or Apple's commission.  To the contrary, the Complaint emphasizes that Plaintiff's app would have been "completely free to use."  Compl. ¶ 8.  Likewise, Plaintiff's alleged injury—that its app was rejected from the App Store, *id.* ¶¶ 38–39—has nothing to do with IAP or a commission.  Second, and for similar reasons, Plaintiff lacks standing to assert claims arising from Apple's alleged "ranking unfairness."  *Id.*  ¶ 31 (describing ranking-suppression theory).  Plaintiff's app was never approved for distribution through the App Store, *see id.* ¶ 49, so it could not have been subject to any alleged ranking suppression.  Third, Plaintiff lacks standing to challenge Apple's $99 annual fee for developers, *id.* ¶ 101, which Plaintiff does not allege that it ever paid.

Because Plaintiff does not allege that it suffered any injury from Apple's alleged IAP requirement, 30% commission, or "ranking suppression," claims based on this alleged conduct must be dismissed.  *See Me. Springs, LLC v. Nestlé Waters N.A., Inc.*, 2015 WL 1241571, at *7 (D. Me. Mar. 18, 2015) (dismissing claim for lack of injury where plaintiff did not operate in market affected by defendant's alleged conduct); *Granfield v. NVIDIA Corp.*, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) (dismissing for lack of standing claims for defects in "products not purchased"); *Gilliam v. Fid. Mgmt. & Research Co.*, 2006 WL 8458180, at *18 (D. Mass. Sept. 18, 2006) (dismissing claims for lack of injury where plaintiffs could not "trace their injuries to a defendant's misconduct" involving a mutual fund that plaintiffs did not own).  Those claims are Counts I, II, and VI, which each depend on alleged injuries related to Apple's alleged 30% commission, *see* Compl. ¶¶ 5, 115, 120–21; or IAP, *see id.* ¶¶ 92–93, 96–97, 105, 110, 113, 115, 120–21, 124, 143–51, 192, 202–09.  Count IV should also be dismissed to the extent it depends

on "app ranking suppression," *see id.* ¶ 170.

Moreover, two of Plaintiff's proposed classes are defined in such a way as to include only developers who were subject to Apple's alleged commission or paid a $99 annual fee. *See* Compl. ¶¶ 119–22 (proposing classes of developers (1) "of any Apple iOS application or in-app product subject to a 30% sales commission" and (2) "who were required to sign the DPLA and pay Apple $99"). Plaintiff has alleged no facts suggesting it is a member of either class, accordingly, each must be stricken from the Complaint under Rule 12(f) as "immaterial" and "impertinent" to the legal issues here. *See Donelson v. Ameriprise Fin. Servs., Inc.*, 2021 WL 2231396, at *7 (8th Cir. June 3, 2021) (stating that "[i]t is sensible to permit class allegations to be stricken at the pleading stage if it is apparent from the pleadings that the class cannot be certified" (internal quotation marks omitted)); *cf. Edwards v. Oportun, Inc.*, 193 F. Supp. 3d 1096, 1100 (N.D. Cal. 2016) (striking proposed class under Rule 12(f) where plaintiff was not a member of the putative class).

## III. Plaintiff's Antitrust Claims Must Be Dismissed.

### A. Plaintiff fails to allege a plausible relevant market. (Counts I–VI)

To state a claim under either Section 1 or Section 2, a plaintiff must plead a relevant market. *See Julian v. George Weston Bakeries Distr., Inc.*, 2005 WL 1926643, at *4 (D. Me. Aug. 11, 2005) (§ 1); *Gilbuilt Homes, Inc. v. Cont'l Homes of New England*, 667 F.2d 209, 211 (1st Cir. 1981) (§ 2). A relevant antitrust market includes a geographic and a product market. *See Flovac, Inc. v. Airvac, Inc.*, 817 F.3d 849, 853 (1st Cir. 2016). Defining the relevant market is the "threshold" for stating Sections 1 and 2 claims. *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) (citing *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285 (2018)); *see Coastal Fuels of P.R., Inc. v. Caribbean Petroleum Corp.*, 79 F.3d 182, 197 (1st Cir. 1996). "[A] plaintiff plausibly must allege that the products in the defined market are not reasonably interchangeable for products outside the defined market." *Bio-Rad Labs., Inc. v. 10X Genomics,*

*Inc.*, 483 F. Supp. 3d 38, 56 (D. Mass. 2020). Failure to sufficiently allege a relevant market requires dismissal. *See, e.g.*, *E. Food Servs., Inc. v. Pontifical Cath. Univ. Servs. Ass'n, Inc*., 357 F.3d 1, 7 (1st Cir. 2004) (§ 1); *Gilbuilt Homes*, 667 F.2d at 211 (§ 2).

The Complaint contains a hodgepodge of eight product-market allegations, many of them simply cut-and-pasted wholesale from complaints in other App Store cases, *see supra* § I, and purports to reserve the right to apply "market definitions interchangeably." Compl. ¶ 91. Such scattershot pleading—which "puts the onus on the court to 'cull through the allegations, identify the claims, and, as to each claim identified, select the allegations that appear to be germane to that claim'"—is reason enough to dismiss all of the antitrust claims. *Currier v. Town of Gilmanton*, 2019 WL 3779580, at *3 (D.N.H. Aug. 12, 2019) (quoting *Ledford v. Peoples*, 657 F.3d 1222, 1239 (11th Cir. 2011)); *Med. Supply Chain, Inc. v. Neoforma, Inc.*, 419 F. Supp. 2d 1316, 1331–32 (D. Kan. 2006) (dismissing antitrust complaint for failure to satisfy Rule 8).

To start, the Complaint conclusorily alleges relevant markets for "iOS app and IAP distribution services," Compl. ¶¶ 92–93; "retailing of iOS apps and related digital products," *id.* ¶ 132; "IAP processing," *id.* at 48; the "iOS App Store," *id.* ¶ 169; and "the iOS Games Payment Processing Market," *id.* ¶ 200. Plaintiff has alleged no facts whatsoever demonstrating that any of these is a unique product market, and any claims based on them must be dismissed. *See Lee v. Life Ins. Co.*, 23 F.3d 14, 18–19 (1st Cir. 1994).

Plaintiff's other alleged markets fare no better. Plaintiff alleges an "iOS app distribution" market, Compl. ¶ 80, a "market/aftermarket for iOS app payment processing," *id.*, and a market for "the entire interstate, smartphone enhanced commerce and information flow transacted via the national internet backbone, *id.* ¶ 90. None of these alleged markets, supported only by factual allegations lifted from *Saurikit, see supra* § I, are plausible here. And Plaintiff has made no attempt

to justify any of these markets with allegations regarding reasonable interchangeability, as is required at the pleadings stage. *See Bio-Rad Labs., Inc.*, 483 F. Supp. 3d at 56.

For instance, the alleged "market for smartphone enhanced commerce and information flow transacted via the national internet backbone," Compl. ¶ 155, on its face includes companies like Google, Samsung, and others, who—like Apple—make smartphones that are used to engage in "enhanced commerce and information flow."  But the Complaint contains no allegations as to the universe of products within this market that are (or are not) reasonably interchangeable, thus warranting dismissal.  Similarly, Plaintiff has not alleged anything about what the "products" are within the "iOS app distribution," "iOS app payment processing," or "IAP distribution services" markets, or why they are not reasonably interchangeable with other products outside of those markets.  In these and several other instances, Plaintiff's failure is particularly egregious because it is attempting to define single-brand markets, which are vanishingly rare in antitrust law and treated with extreme skepticism. *See In re Am. Express Anti-Steering Rules Antitrust Litig.*, 361 F. Supp. 3d 324, 343 (E.D.N.Y. 2019); *Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1198 (N.D. Cal. 2008).  For these reasons, Plaintiff has not plausibly alleged a relevant market, and its antitrust claims must be dismissed.

**B.  Plaintiff fails to allege plausible antitrust injury. (Counts I–VI)**

Antitrust injury is a pleading requirement for Section 1 and 2 claims. *See Malden Transp. v. Uber Techs., Inc.*, 321 F. Supp. 3d 174, 180 (D. Mass. 2018) (citing *R.W. Int'l Corp. v. Welch Food, Inc.*, 13 F.3d 478, 487 (1st Cir. 1994)).  To allege antitrust injury, "plaintiffs must show that 'defendants' action caused an injury to *competition*, as distinguished from impact on themselves.'" *Id.* (quoting *R.W. Int'l Corp.*, 13 F.3d at 487).  Injury to competition is "usually measured by a reduction in output and an increase in prices in the relevant market." *Sullivan v. Nat'l Football*

*League*, 34 F.3d 1091, 1097 (1st Cir. 1994), *as amended on denial of reh'g* (Oct. 26, 1994).

The theory of harm pleaded in the Complaint is that Plaintiff's app was rejected from the App Store, thereby harming Plaintiff's business. *See, e.g.*, Compl. ¶¶ 9, 38–39, 49; *see also id.* ¶ 44 ("Plaintiff has suffered financial losses."). This theory has no connection to any supposed injury to competition. *Cf. Yagoozon, Inc. v. Kids Fly Safe*, 2014 WL 3109797, at *9–10 (D.R.I. July 8, 2014) (concluding that plaintiff's alleged "loss of sales" did not plead "actual or potential injury to competition"). The only allegations of antitrust injury in the Complaint reflect Plaintiff's wholesale reuse of others' complaints and have no relation to Plaintiff's theory of harm here. *Compare* Compl. ¶¶ 96, 99 (alleging Apple restricts output by barring competing app stores from the App Store); *id.* ¶ 97 (alleging Apple's "distribution charges" are so high that they "keep developers out of the App Store"); *id.* ¶ 149 (alleging 30% commissions are evidence of supracompetitive prices), *with* Ex. F (*Cameron*) ¶¶ 63, 65, 74, 131. Having failed to allege any antitrust injury it suffered, Plaintiff's Section 1 and 2 claims are fatally defective.

### C. Plaintiff fails to allege exclusionary conduct. (Counts I, II, and IV)

To state a Section 2 claim, a plaintiff must plead willful acquisition or maintenance of monopoly power in a relevant market. *Diaz Aviation Corp. v. Airport Aviation Servs., Inc.*, 716 F.3d 256, 265 (1st Cir. 2013). "[E]xclusionary conduct," an essential element of the claim, *Town of Concord, Mass. v. Boston Edison Co.*, 915 F.2d 17, 21 (1st Cir. 1990), is "the willful acquisition or maintenance of" monopoly power "as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident," *Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP* ("*Trinko*"), 540 U.S. 398, 407 (2004).

Plaintiff alleges Apple engaged in exclusionary conduct by rejecting Plaintiff's app for distribution on the App Store. *See, e.g.*, Compl. ¶¶ 14, 38–39, 45, 49. But Apple's alleged conduct, which amounts to enforcement of its own business terms, is entirely permissible under well-settled

Supreme Court precedent and does not support Section 2 claims under any theory (attempt, monopoly, or monopsony). As the Supreme Court has stated, absent a duty to deal with competitors, a defendant "has no obligation to deal under terms and conditions favorable to its competitors." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 450–51 (2009); *see also Homefinders of Am., Inc. v. Providence Journal Co.*, 621 F.2d 441, 443 (1st Cir. 1980) (no antitrust claim from refusal to deal with advertiser who violated advertising policy); *New York v. Facebook*, 2021 WL 2643724, at *10 (D.D.C. June 28, 2021). Even assuming that Apple and Plaintiff compete (despite a lack of plausible allegations to that effect), Apple is under no obligation to deal with Plaintiff on Plaintiff's favored terms.

A recent case illustrates the point. In *Blix Inc. v. Apple Inc.*, the plaintiff alleged that Apple's removal of the plaintiff's email app from the MacOS App Store for violating Apple's Guidelines was actionable under Section 2 because it "abus[ed] power over key distribution channels." *See* 2020 WL 7027494, at *1, 8 (D. Del. Nov. 30, 2020). The court dismissed these claims, concluding that the plaintiff's "abuse of distribution channels" theory would create a "new form of antitrust liability never before recognized by the Supreme Court." *Id.* at *8 (quotation marks omitted); *cf. Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*, 985 F. Supp. 2d 612, 623 (S.D.N.Y. 2013) (dismissing claims that Amazon engaged in anticompetitive conduct by not allowing plaintiffs "to sell e-books on Amazon's devices and apps").

Under the principles articulated in *Blix* and similar cases, the Court should reject Plaintiff's theory that it somehow has a "right" to have its app distributed on the App Store, and to do so on the terms it prefers, Compl. ¶¶ 46, 101. The Court should likewise reject Plaintiff's theory that it is exclusionary conduct for Apple to require developers to "sign the DPLA and pay Apple $99," *id.* at 34, to license Apple's IP, use its developer tools, or access Apple's customer base, as Apple

has no obligation to do otherwise. *See Pac. Bell Tel. Co.*, 555 U.S. at 450. Accordingly, all Section 2 claims should be dismissed for failure to plead exclusionary conduct.

### D. Plaintiff fails to allege concerted action or unlawful agreement. (Count V)

Section 1 prohibits restraints of trade achieved through *concerted activity*. *Gonzalez-Maldonado v. MMM Healthcare, Inc.*, 693 F.3d 244, 249 (1st Cir. 2012). A threshold requirement for such a claim is "the existence of an agreement." *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016). "Unilateral conduct by a single firm, even if it appears to restrain trade unreasonably, is not unlawful under [S]ection 1." *The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1152 (9th Cir. 1988) (internal quotation marks omitted); *Odishelidze v. Aetna Life & Cas. Co.*, 853 F.2d 21, 23 (1st Cir. 1988) (same). Plaintiff fails to allege the unlawful agreement necessary to state a Section 1 claim.

Courts routinely dismiss Section 1 claims that are premised on one party's unilateral creation and announcement of business terms to which another party is required to adhere. *See Relevent Sports, LLC v. U.S. Soccer Fed'n, Inc.*, 2020 WL 4194962, at *6–7 (S.D.N.Y. July 20, 2020) (concluding that U.S. Soccer's adherence to FIFA policies was "unilateral compliance with FIFA's directive"); *Sambreel Holdings LLC v. Facebook, Inc.*, 906 F. Supp. 2d 1070, 1076–77 (S.D. Cal. 2012) (concluding that Facebook's mandatory agreements for app developers were "unilateral action"). Courts dismiss claims of unilateral decisionmaking because a company "generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently." *Dennis v. Husqvarna Forest & Garden Co.*, 1994 WL 759187, at *3 (D.N.H. Dec. 27, 1994) (quoting *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984)).

Just as did the plaintiffs in those cases, Plaintiff here challenges unilateral conduct: Apple's rejection of Plaintiff's app. Compl. ¶¶ 38–39. But Apple's Guidelines and other App Store policies are merely the terms on which Apple chooses to do business with developers, as the

Complaint concedes. *See, e.g.*, *id.* ¶¶ 56, 58, 103. Plaintiff's claim fails because it challenges only the unilateral "announcement of policy and simple refusal to deal." *Homefinder's of Am., Inc. v. Providence Journal Co.*, 471 F. Supp. 416, 421 (D.R.I. 1979), *aff'd*, 621 F.2d 441 (1st Cir. 1980). Such unilateral conduct is not prohibited by Section 1.

### E.  Plaintiff fails to identify two distinct tied products. (Count VI)

Tying involves the linking of two separate products from two separate markets; its essential characteristic "lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product" that the buyer did not want or would have preferred to purchase elsewhere. *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12, 21 (1984). To state a tying claim, a complaint must allege facts showing that: (1) the tying and tied products are actually two distinct products; (2) there is an agreement or condition that establishes a tie; and (3) the defendant has sufficient power in the market for the tying product to restrain trade in the market for the tied product. *George Lussier Enters., Inc. v. Subaru of New Eng., Inc.*, 1999 WL 1327396, at \*2 (D.N.H. Dec. 13, 1999); *Aerotec Int'l*, 836 F.3d at 1178.

As noted above, Plaintiff lacks standing to bring this claim (copied from *Epic Games*) because the Complaint does not allege that Plaintiff participated in the allegedly tied "IAP" market. *See supra* § II. The claim also should be dismissed because Plaintiff alleges no facts showing that the two purportedly tied products—"Apple's App Store" and "Apple's In-App Purchase"—are distinct. Compl. ¶ 195; *see Iqbal*, 556 U.S. at 678; *cf. Rick-Mik Enters. v. Equilon Enters., LLC*, 532 F.3d 963, 974 (9th Cir. 2008) (affirming dismissal of tying claim where allegedly tied market was not "separate and distinct" from the tying product).

### F.  Plaintiff fails to allege inability to access an essential facility. (Count III)

An essential facilities claim is a theory of Section 2 monopolization that similarly challenges a refusal to deal. *See Aerotec Int'l*, 836 F.3d at 1184. The essential facilities doctrine

has never been recognized by the Supreme Court, and its viability remains an open question. *See Trinko*, 540 U.S. at 411. To the extent the doctrine *is* viable, an "indispensable requirement" is "the unavailability of access" to the facility; "where access exists, the doctrine serves no purpose." *Id.* In other words, the doctrine is about facility access; not access "in a way that is conducive to [a competitor's] existing business model." *Aerotec Int'l*, 836 F.3d at 1185.

Plaintiff alleges that Apple monopolizes the so-called market for "smartphone enhanced commerce and information flow transacted via the national internet backbone" through its alleged "unlawful denial" of Plaintiff to "an essential facility—access to iOS userbase." Compl. ¶¶ 157–58. This copycat claim fails at the outset because Plaintiff does not allege that access to the App Store is entirely unavailable to Plaintiff. *See Trinko*, 540 U.S. at 411. Nor does Plaintiff allege that it competes in this alleged market. *Cf. Pistacchio v. Apple Inc.*, 2021 WL 949422, at *3 (N.D. Cal. Mar. 11, 2021) (rejecting similar essential facilities claim where plaintiff did not compete with Apple). Instead, the Complaint alleges only that Apple denied Plaintiff's app because it failed to meet Apple's policies and requirements. Compl. ¶¶ 38–39. What is more, as the Complaint concedes, the App Store is not the only way to reach the iOS user base—app users can also be reached, among other channels, through "web browser apps." *Id.* ¶ 52. The App Store therefore is not "essential." *Aerotec Int'l*, 836 F.3d at 1185 ("[A] facility is only 'essential' where it is otherwise unavailable"); *cf. Blix, Inc.*, 2020 WL 7027494, at *7 (concluding that MacOS App Store was not essential facility where plaintiff's product could be distributed on other platforms).

The essential facilities claim is further flawed: iOS, as Apple's proprietary operating system protected by patents, trademarks, and copyrights, *cannot be* an essential facility. "[A]n intellectual property owner has the right unilaterally to decide not to use or license its intellectual property." Herbert Hovenkamp, et al., *IP and Antitrust: An Analysis of Antitrust Principles*

18

*Applied to Intellectual Property* § 13.03 [C][2] (3rd ed. 2020 supp.).  Without that right, a firm "might be deterred from investing, innovating, or expanding (or even entering a market in the first place) with the knowledge anything it creates it could be forced to share." *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1073 (10th Cir. 2013) (Gorsuch, J.).  Accordingly, Plaintiff cannot "just demand the right to piggyback on its larger rival" in court, rather than "investing [or] innovating" itself.  *Id.*  For all these reasons, the essential facilities claim should be dismissed.[3]

## IV. Plaintiff's Contract Claims Must Be Dismissed.

### A.  Plaintiff fails to plead breach of any contract. (Count VII)

To state a breach of contract claim under California law, *see supra* n.1, a plaintiff must plead: (1) a contract; (2) plaintiff's performance or excuse for nonperformance; (3) breach; and (4) damages.  *Hamilton v. Greenwich Invs. XXVI, LLC*, 126 Cal. Rptr. 3d 174, 183 (Cal. Ct. App. 2011).  A plaintiff also "must identify the *specific provision* of the contract allegedly breached." *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 930 (N.D. Cal. 2012) (emphasis added) (citing *Progressive W. Ins. Co. v. Yolo Cnty. Superior Court*, 37 Cal. Rptr. 3d 434, 449 (Cal. Ct. App. 2005)).  There are no such allegations here.

Rather, Plaintiff alleges that "Apple breached the fundamental intent, and the legal portions" in the Developer Agreement by rejecting Plaintiff's allegedly "legal" and "reasonable" app.  Compl. ¶ 212.  But Plaintiff identifies no specific term in which Apple promised that all "legal" and "reasonable" apps would be permitted on the App Store.  Nor could Plaintiff do so, as Apple does not—in the Developer Agreement or elsewhere—make promises about the kind of app that it will allow on the App Store.  Indeed, the DPLA places such decisions in Apple's "sole discretion."  Ex. B §§ 3.2(g), 6.9.  As a result, this claim should be dismissed.

---

[3] This claim also fails because the only relevant market pleaded as to this claim is not a proper relevant market. *See supra* § III.A; *cf. hiQ Labs, Inc. v. LinkedInCorp.*, 485 F. Supp. 3d 1137, 1151 (N.D. Cal. 2020).

**B. Plaintiff fails to plead breach of the covenant of good faith and fair dealing. (Count VIII)**

First, this claim rehashes the breach-of-contract claim and likewise fails. *Compare* Compl. ¶¶ 212–13, *with id.* ¶¶ 218, 220. Where allegations "do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action . . . no additional claim is actually stated." *Soundgarden v. UMG Recordings, Inc.*, 2020 WL 1815855, at *17 (C.D. Cal. Apr. 6, 2020).

Second, Plaintiff does not allege frustration of any express contractual term. The "implied covenant is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." *Donohue*, 871 F. Supp. 2d at 932 (internal quotation marks omitted); *Plastino v. Wells Fargo Bank*, 873 F. Supp. 2d 1179, 1191–92 (N.D. Cal. 2012). As noted *supra* § IV.A, Apple never agreed with Plaintiff that it would be permitted to distribute apps on the App Store.

Third, Plaintiff cannot rely on an implied covenant untethered to any contract. The Complaint alleges that Apple "breached the covenant" when it "banned thousands of developers from competing with popular free or low cost apps." Compl. ¶ 218. This allegation is divorced from any contract term and fails to show any term that was frustrated; accordingly, the claim must be dismissed. *See Soundgarden*, 2020 WL 1815855, at *17.[4]

**CONCLUSION**

Apple respectfully requests that the Court dismiss the Complaint.

---

[4] Apple maintains that Plaintiff is bound by the Developer Agreement and DPLA because Plaintiff is in privity with the third-party entity that submitted Plaintiff's app for review. *See* Mot. to Transfer at 4–6. If the Court concludes that Plaintiff is not bound by these contracts, then Plaintiff's contract claims must be dismissed. *See Hamilton*, 126 Cal. Rptr. 3d at 183. Moreover, if Plaintiff is not contractually bound, and was not the entity that submitted the app for review, then there is a significant question whether Plaintiff is the "real party in interest," as required by Fed. R. Civ. P. 17(a). *See* ECF No. 15. On June 25, 2021, Apple asked Plaintiff's counsel for the name of Plaintiff's app and the submitting entity, but as of the date of this filing Plaintiff has not responded. Apple reserves the right to raise a Rule 17(a) argument at a later date, should it emerge that Plaintiff had no connection to the submitting entity.

Dated: July 12, 2021

Respectfully submitted,

Defendant, APPLE INC.
By and through its attorneys,


_/s/ Peter J. Brann_
Peter J. Brann
Stacy O. Stitham
BRANN & ISAACSON
184 Main Street, 4th Floor
Lewiston, ME 04243-3070
Tel.: (207) 786-3566
PBrann@brannlaw.com
SStitham@brannlaw.com

_/s/ Mark A. Perry_
Mark A. Perry, *pro hac vice*
Rachel S. Brass, *pro hac vice*
Zachary B. Copeland, *pro hac vice*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel.: (202) 955-8500
MPerry@gibsondunn.com
RBrass@gibsondunn.com
ZCopeland@gibsondunn.com