UNITED STATES DISTRICT COURT
FOR THE MAINE DISTRICT

| | | |
|---|---|---|
| PRIMARY PRODUCTIONS LLC<br>on behalf of itself and all others similarly situated<br><br>　　　　　　　　　　Plaintiff,<br><br>vs.<br>APPLE INC.<br>　　　　　　　　　　Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case: 21-cv-137-JDL<br><br>MOTION FOR<br>PRELIMINARY INJUNCTION<br>TO PRESERVE EVIDENCE |

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY**

## I.　　REQUEST FOR PRELIMINARY INJUNCTION

Plaintiffs brought claims in this Court to remedy the monopolistic Apple App Store, and asserted putative classes representing millions of developers and tens of millions of software denials. No Rule 26(f) conference has been scheduled despite the case pending for nearly three months. A related case has been pending since January in New Hampshire, and a similar motion there was determined as "moot" pending transfer to Northern California. This particular case deals with Primary Productions' app that was denied App Store distribution nearly four years ago, and therefore presents significant concerns for evidence spoliation. With no conference in sight and Apple's legal position regarding this issue thus far having no Answer or opposition on the merits, it is necessary for a preliminary injunction regarding evidence preservation to be granted by this court.

The "Open App Markets Act," act introduced to the United States Senate yesterday , targets the same unfair practices of Apple that this suit does. Specifically, the proposed legislation requires Apple to allow app installation from sources other than the App Store. This is the subject of a pending injunction in Northern California, and its applicability to free apps (rather than paid

apps with *Epic)* Apple has conceded in this very Court that Plaintiffs are first-to-file. With an inevitable lobbying leading up to vote on the matter, and inevitable federal investigation in to these practices on the horizon, it is now of extreme importance that the Plaintiffs ensure certain evidence. Not only is this evidence critical to our claims, and millions of class members, but this case may likely be a reference to the aforementioned lawmaking processes. It is hence of nationwide importance that these class members be identified immediately, and the scope and extent of their censorship. justice delayed under these circumstances is justice denied.

It is noted that Apple has moved to dismiss our claims *five times* for "failing to state a claim," but just yesterday Senator Blumenthal stated the exact same practices are "most offensive to [him] in how they strangle new apps." The Court can take direct judicial notice that these claims are not only likely to prevail, but cause "offense" to a well respected senior senator. The Court is aware that Plaintiffs counsel feels strongly that Apple, and counsel Gibson Dunn, has mistreated them by filing harassing pleadings, and in fact, may be conflicted by a pending SCOTUS RICO case against Gibson Dunn. [1]

The request will not cause any injury to the Defendants. Plaintiff brings this motion and respectfully requests that the Court issue an immediate, narrowly-tailored order requiring Apple to maintain the *status quo* by preserving relevant evidence and permitting immediate focused discovery in to the identity of potential class members as well as the internal communications regarding these individual applications maintained by Apple.

To satisfy the "likelihood of success on the merits" prong of the preliminary injunction analysis, a plaintiff can demonstrate that he is likely to succeed on the merits; alternatively, a preliminary injunction is also "appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the

---

[1] Gibson Dunn has not yet answered Plaintiffs' concern raised last week that they are a witness in this case. Until they do so, Plaintiff's counsel must, in the matter of full disclosure inform the Court that both parties counsels are in a longstanding dispute, and resolution of this case on the merits must not be compromised by such conflict of interest.

plaintiff's favor." *Alliance for the Wild Rockies*, 632 F.3d at 1134-35. This standard is relaxed, however, in the context of an injunction requiring the perseveration of evidence, where likelihood of success in the litigation on the merits is not a relevant consideration. *Capricorn Power Co., Inc. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 432-33 (W.D. Pa. 2004); *Zaccone v. Ford Motor Co.*, 2016 WL 2744837, at *1 (M.D. Fla. May 22, 2016). When evaluating whether to issue an order for preservation of discovery materials, the Court should consider (1) the concern for maintenance of the evidence in the absence of an order (2) irreparable harm in the absence of an order; and (3) the capability of the party to maintain the evidence. *LaSala v. Marfin Popular Bank Public Co., Ltd.*, 2009 WL 2449902, at *2 (D.N.J. Aug. 7, 2009).

Here, as discussed at length below the hardship here tips sharply in the plaintiff's failure. This information is readily available and can be preserved, communicated, or deleted at the stroke of a few keys. Given the political climate surrounding Apple any of the three possible, this motion only intends to make sure it is one of the first two options.

## II.     SUBJECT MATTER OF INJUNCTION FOR EXPEDITED DISCOVERY

Plaintiffs hereby notice this motion for an injunction to preserve evidence, and in fact produce the preserved data as limited, expedited discovery to protect the interests of the proposed class members and to ascertain vital knowledge to certify the class members.

Under Fed. R. Civ. Pro. 26(d)(1) parties may seek a court order for discovery to occur before the parties have conferred as required by Rule 26(f). Plaintiffs request such an order so that discovery can occur on limited issues relevant to the certifications of a class. This is a case of national importance concerning excessive developer taxes by monopoly and/or monopsony in the downstream app market and app retail markets held by Defendant Apple. As the SAC points out, the Congressional Subcommittee issued recent findings of concern that Apple's $2 billion annual tax on small developers is an illegal tax. The report also documents the "tyranny" Apple has forced upon small developers. This class action is the first such to protect the interests of small developers, in the form of certifying a class to redress the annual taxes, and of certifying a class

representing developers of free apps. To the best of counsel's knowledge, neither of these proposed classes are certified or pending certification, in any other district.

To wit, these developers share substantial overlap with another class – consumers – that the Supreme Court recently granted *certiorari* to in *Pepper* (see SAC). In that case, Apple argued to the highest court that consumers were a misapplication of the true party with standing, the developer. Here, the proposed certified class falls squarely in between that of consumers, and large developers.

Apple's conduct in this litigation verges on contempt for the *certiori* granted in Pepper. Apple has filed no less than six motions to extend time, and appears simply unwilling to provide the answer mandated by *Pepper* and related assertions Apple made in that case.

Apple's disdain (and related "offensive behavior" in the words of Senator Blumenthal) for developers is evidenced by their very own filings in this Court. Apple has made outrageous claims that Plaintiffs' claims are "cavalier" and "in disregard for the law," when, in fact and as a matter of law, the claims were worthy of an entire congressional report and a seven-year certiorari process, and now, a bipartisan act of Senate. This is no way to treat a small development team, lead by a nobel committee cardiologist who saved countless lives with his MBCK invention, that simply tried to help with COVID relief. On that note, Apple very suspiciously wishes to move this case to the judge that misapplied antitrust law, resulting in the seven-year delay for *certiorari*.

To worsen matters, no less than twenty-four hours after five unnamed Plaintiffs joined a related NHD case, Apple sought to name the unnamed Plaintiffs, in flagrant disregard for the FRCP. Apple sought to induce speculation as to the relation of the unnamed Plaintiff's to Coronavirus Reporter, at a minimum, which is particularly inappropriate in a case where Apple apparently seeks to change venue to file a frivolous 12(b)(6) motion in contempt of *Pepper*.

It is time the intent and meaning of *Pepper* is recognized in this district, and it is time for Apple to file an answer. But pending this, counsel has a duty to protect the interests of the proposed class members.

The proposed class members have been taxed $99 a year by Apple in the form of an annual subscription to access the hundreds of millions of App Store users. The nearest rival (see SAC) charges $25. Assuming ten years of overtaxation, each developer is owed $750 by Apple. This is a significant sum of money, particular in a frail economy where Apple, yesterday, published the highest profits in corporate history. In short, Apple's monopoly is growing, they are milking small developers who wish to innovate, and congress and SCOTUS have more than authorized this action. It must move ahead, and the class members must be identified and protected.

Similarly, many small developers of free apps have been barred from publication, and or subject to ranking suppression (see SAC). Several of the unnamed Plaintiff's claims, and countless class members claims, are approaching statute of limitations concerns. Delaying their identification and certification is tantamount to denying them justice.

Counsel seeks a straightforward discovery production that should be nearly trivial for a technology company such as Apple. First, counsel seeks a list of contact information and receipts for all developer fees paid to Apple over the past ten years. Second, counsel seeks a data download of all free app submissions, and their resolution (i.e. all correspondence and internal memorandums via App Store Connect), by the App store team. Apple has published that they reject 40,000 apps a week. This information is critical in proving the foundation of this lawsuit. Spoliation of this evidence – particularly, how Apple's powers and abuses have grown since the launch of the App Store in 2008, will be of critical importance to jury deliberations. The evidence must be immediately preserved and turned over to the Court and counsel.

The discovery sought represents tens of thousands of person years of wasted developer resources. On the other hand, providing this data to the Court may take Apple about a week to produce. The relative risks and costs to both parties is clear. This is a reasonable discovery request that the Court should grant.

This Court previously applied the aptly named reasonableness standard from the <u>Momenta Pharms, Inc. v. Teva Pharms. Indus. Ltd.</u>, 765 F.Supp. 2d 87,88 (D. Mass. 2011) case law. See.

Wilcox Industries Corp. v. Hanson, Civil No. 11-cv-511-PB (2012). "When applying this standard, courts have considered various factors, such as the purpose for the discovery, the ability of the discovery to preclude demonstrated irreparable harm, the plaintiff's likelihood of success on the merits, the burden of discovery on the defendant, and the degree of prematurity." Id. *citing* Momenta, 765 F.Supp. 2d at 89.

The Defendant has utilized extensive tactics in an attempt to delay this matter unfairly by filing to change venue and to extend their answer deadline fur a full year. This is a clear attempt to delay and or subvert the claims of the Plaintiffs including those yet to be discovered for months in order for Apple to continue to engage in this monopolistic behavior for as long as possible. The United States Supreme Court in Apple Inc. v. Pepper, 139 S. Ct. 1514, 1518 (2019) ruled that app developers can sue apple for antitrust violations, further delay, particularly when it comes to certifying a class would thwart the ability of that class to pursue these issues frustrating the Supreme Court's mandate in Pepper. Relevant to this case, there is little question SCOTUS' expansion to consumers shall be similarly expanded to investors (ie Primary Productions) and not just the developer itself in privity with the App Store (as required under the illegal DPLA).

The Plaintiff seeks discovery readily available to Apple in order to certify those class members who may have claims against apple for the gorging $99 fee that they levied against those individuals who attempted to put an app on the app store as well as those developers who have had Apple's draconian 30% rent and monopolistic price fixing. The longer it takes to certify a class the more small app developers are put through these riggers by Apple illegally.

These claims will succeed on the merits. The ability of these developers to sue under these circumstances is law of the land due to Pepper. It will quite possibly be the law of the land reinforced and expanded by the "bipartisan Senate" – a term not exactly common these days. Apple has been participating in these destructive monopolistic practices since the advent of the iPhone, becoming the largest company in the world on the backs of developers forced to comply with their rules in order to garner the hopes of merely getting an app on the app store.

There is almost no burden on the Defendants to providing this information besides the download media cost. Their business model necessitates a central database where applications are kept. It should be a simple matter to send the information along.

Leaving aside the Defendant's delaying tactics in this matter this request is barely premature, an answer to the Plaintiff's complaint should be filed in short order at which point a conference would be scheduled. The Plaintiff is requesting this information with a view to judicial economy so that the certification of a class would not hold up this important litigation.

Nearly endless man hours of small tech companies have been and continue to be wasted because of these practices. The Plaintiff seeks initial discovery to determine what developers have paid the economically wasteful fees to Apple, or have been denied publishing rights, in order to certify a class and give voice to those developers who have been silenced by apple for too long.

WHEREFORE, The Plaintiff requests the court order that identifying information regarding class members be preserved and grant the Plaintiff ability to send preconference discovery on the limited issues required to identify potential class members.

Respectfully submitted, this 12th day of August 2021.

/s/ Keith Mathews
Keith Mathews
NH Bar No. 20997
Associated Attorneys of New England
PO Box 278
Manchester, NH 03105
Ph. 603-622-8100
keith@aaone.law

## CERTIFICATE OF SERVICE

I, Keith Mathews, do declare as follows:

I certify that a copy of the foregoing was delivered electronically to counsel for the Defendants with counsel, and emailed to those without known counsel.

Executed on this 12th day of August 2021.

/s/ Keith Mathews
Keith Mathews
Attorney for Plaintiff